[Civ. No. 58021. Second Dist., Div. One. Nov. 28, 1980.]

ROBERT JOSEPH TAGLIAVIA, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Lewis D. Jones for Plaintiff and Appellant.

John H. Larson, County Counsel, and Dennis M. Gonzales, Deputy County Counsel, for Defendants and Respondents.

OPINION

RYBURN, J.*—Plaintiff appeals from a judgment of dismissal after defendants' demurrer was sustained without leave to amend.

### Facts

Plaintiff, in his second amended complaint, alleged that while appearing in municipal court he was placed in custody at the direction of a municipal court commissioner, and detained for approximately one day. Plaintiff brought an action for false imprisonment against the commissioner and the County of Los Angeles. Defendants' demurrer was

*Assigned by the Chairperson of the Judicial Council.

sustained without leave to amend on the ground of judicial immunity.

The record indicates that the commissioner was acting as a temporary judge at the time plaintiff appeared before him and at the time of the order placing plaintiff in custody.

*Issue*

The issue presented on appeal is whether a commissioner is a judicial officer and entitled to judicial immunity.

*Discussion*

■ The decisions of this state uniformly and consistently grant immunity from civil suit to judges in the exercise of their judicial functions. (*Oppenheimer v. Ashburn* (1959) 173 Cal.App.2d 624 [343 P.2d 931].) That is true even if the acts are in excess of the jurisdiction of the judge and are alleged to have been done maliciously and corruptly. (*Turpen v. Booth* (1880) 56 Cal. 65.) As stated in *Taliaferro v. County of Contra Costa* (1960) 182 Cal.App.2d 587 [6 Cal.Rptr. 231], the rule is true whether the acts are of an inferior court or one of general jurisdiction, and public policy requires that such immunity is necessary to preserve the system established for the administration of the law.

The most recent expression of that policy by the United States Supreme Court is in *Stump v. Sparkman* (1978) 435 U.S. 349 [55 L.Ed.2d 331, 98 S.Ct. 1099], where it was held that a judge was not subject to suit for having signed an ex parte order which authorized and resulted in sterilization of a minor. In reaching its conclusion, the court referred to earlier cases on judicial immunity.

In *Randall v. Brigham* (1868) 74 U.S. (7 Wall). 523 [19 L.Ed. 285], the court stated that judges are not responsible "to private parties in civil actions for their judicial acts, however injurious may be those acts, and however much they may deserve condemnation, unless perhaps where the acts are palpably in excess of the jurisdiction of the judges, and are done maliciously or corruptly." (*Id.* at p. 537 [19 L.Ed. at p. 292].)

In *Bradley v. Fisher* (1871) 80 U.S. (13 Wall.) 335 [20 L.Ed. 646], the court reconsidered the statement in *Randall* and concluded that "the qualifying words used were not necessary to a correct statement of the law," and held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such

acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." (*Id.* at p. 351 [20 L.Ed. at p. 651].) The court recognized that it was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequence to himself." (*Id.* at p. 347 [20 L.Ed. at p. 649].)

The dissent in *Stump* v. *Sparkman, supra,* 435 U.S. 349, was on the ground that the act of the judge was nonjudicial and he was not entitled to judicial immunity. On that same ground it has been held that although a judge's exercise of criminal contempt power is clearly judicial in nature and falls within the scope of judicial immunity, the eviction of a person from the courtroom by a justice of the peace by use of physical force, a task normally performed by a sheriff or bailiff, was "simply not an act of a judicial nature." (*Gregory* v. *Thompson* (9th Cir. 1974) 500 F.2d 59, 64.) The service by a judge on a board with only legislative and administrative powers does not constitute a judicial act, and there is no judicial immunity. (*Lynch* v. *Johnson* (6th Cir. 1970) 420 F.2d 818.)

The United States Supreme Court, on the same principles of public policy, has held that a public prosecutor has an absolute immunity from liability in a suit for damages under the Civil Rights Act. (*Imbler* v. *Pachtman* (1976) 424 U.S. 409 [47 L.Ed.2d 128, 96 S.Ct. 984].)

In *Singer* v. *Bogen* (1957) 147 Cal.App.2d 515 [305 P.2d 893], the court affirmed the dismissal of an action for false imprisonment after a demurrer was sustained on the ground of judicial immunity, and in reviewing the principles involved, quoted from *Bradley* v. *Fisher, supra,* 80 U.S. (13 Wall.) 335: "'In Cooley on Torts, third edition, volume 2, page 795, the author says: "Whenever, therefore, the State confers judicial powers upon an individual, it confers them with full immunity from private suits. In effect the State says to the officer that these duties are confided to his judgment; that he is to exercise his judgment fully, freely and without favor and he may exercise it without fear; that the duties concern individuals but they concern more especially the welfare of the State and the peace and happiness of society; that if he shall fail in the faithful discharge of them, he shall be called to account as a criminal, but that in order that he may not be annoyed, disturbed, and impeded in the performance of these high functions, a dissatisfied individual shall not be suffered to call in question his official action in a suit for

damages. This is what the State, speaking by the mouth of the common law, says to the judicial officer. The rule thus laid down applies to large classes of offices, embracing some, the powers attached to which are very extensive and others whose authority is exceedingly limited."'" (*Singer, supra,* 147 Cal.App.2d 515, 523-524.)

In *Pearson v. Reed* (1935) 6 Cal.App.2d 277 [44 P.2d 592], the court held a city prosecutor not liable in a civil action for damages sustained through prosecution of a criminal action maintained by him with malice and without probable cause. In reaching its conclusion the court stated: "No policy has been declared and maintained more firmly than the one which preserves the independence and freedom of action of judicial and *quasi*-judicial officers acting in official capacity. The exemption runs as to liability for damages resulting from official acts, although they be done without probable cause and with malice." (*Id.* at p. 280.) (Italics in original.)

■ As fully set forth in *Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351 [110 Cal.Rptr. 353, 515 P.2d 297], the history of California Constitution, article VI, section 22, indicates that it was designed to preserve existing procedures for meeting the increasing judicial workload through the use of court assistants such as commissioners, referees, and masters. For all of the reasons of public policy expressed in the decisions granting judicial immunity to judges, that same immunity must apply to a commissioner acting either as a temporary judge or performing subordinate judicial duties ordered by the appointing court under California Constitution, article VI, section 22, and all statutes enacted to implement that section. The commissioner is immune from civil liability in the exercise of judicial functions even if the acts are in excess of the jurisdiction of the assignment and are alleged to have been done maliciously or corruptly.

Judgment of dismissal is affirmed. Respondent shall recover costs on appeal.

Spencer, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 24, 1980, and appellant's petition for a hearing by the Supreme Court was denied January 21, 1981.